on behalf of Petitioner Joyce Manning. I'm going to kind of jump right into what I think the meat of the issues are. This is an aggravated felony charge based upon fraud or deceit. The state statute is NRS 205.463, using the personal identifying information of another. The problem is that if we use the Taylor categorical approach, there is no match in elements between the state statute and the generic offense of fraud or deceit. As this Court has defined in Lee v. Ashcroft, the three requirements for that, there has to be fraud or deceit and there has to be loss to the victim in excess of $10,000. None of those requirements are found in NRS 205.463. In that statute, in the state statute, it only requires that you use the personal identifying information of another to either for an unlawful purpose or to harm or injure. And none of that requires that the personal identifying information be acquired by fraud, be acquired by deceit, or that the mechanism by which that identifying information is used is fraudulent or deceitful. Can somebody use personal identifying information to harm someone else without fraud or deceit? Absolutely. Can you give me an example? Well, the perfect example is what's charged here, an unauthorized transaction. That's the substance of the charge. So it doesn't ---- But they transferred a lot of money that belonged to somebody else, right? Yes. And wasn't that harmful to the person? It was harmful. And was it done with an honest purpose? I wouldn't ---- see, I don't think it's purpose. Well, that gets to the fraud or deceit issue. I'm struggling with how you get away from the concept that there's fraud or deceit involved in this particular situation. Because there's no willful misrepresentation, because there's no ---- But, counsel, isn't there a willful ---- there must be a willful misrepresentation for there to be an unauthorized transfer from somebody else's account. Explain how that's not. I agree. Here, the person was only authorized to transfer certain sums of money as an employee of the business. She went beyond the authorization. The statute requires no more than that. And if it's harm or injury, it doesn't say that it was done by fraud or deceit. It just says that the transaction was merely unauthorized. You're reading into the criminal statute more than the State would ever be ---- I agree with you, counsel, on a strict categorical approach. Moving beyond that to a modified categorical approach, however, given what she pled to, given what she stated at her guilty plea, we know a little bit more than just what the statute might provide. I can understand theoretically under the statute your point. But given that this was, in fact, a plea to an unauthorized transfer from an account, I'm struggling to see how that is not necessarily a fraudulent act. Because she was authorized to make transactions. Because she didn't obtain that authorization by fraud, trickery, or deceit. It was authorized. She made the transaction by fraud. For transactions that were not permitted by the employer. And the point has to be made very poignantly here, because if there ---- if you really think about it, what you're talking about is that this person was defrauded, that there was a loss, that they lost some benefit. But our statute does not require that. In fact, that's the point I make. If the statute did require $10,000 of loss in money, it would have to be pled and proven. And then I would agree with you that there's some mechanism by which she obtained this money that was fraudulent or deceitful. In fact, if you read the amended indictment, it doesn't say she received the money. It doesn't say that they lost the money. It doesn't say that the employer was defrauded. That's missing. That's entirely absent. That's why I say that the mechanism by which this offense was committed, fraud or deceit, is lacking. It's not a requirement in our statute. It's mere lack of authorization. And the statute doesn't define for us where that money has to go into my client's pocket, the person's pocket, or somebody else's pocket. Kennedy. Counsel, let me read to you count one of the indictment, third amended indictment. It refers to your client, did honor between October 1, 1999, December 31, 1999, then and there knowingly and feloniously obtain personal identifying information of another person, to wit, Carrera de Carrera of Nevada, Inc., and did use said identifying information to harm said person or for any unlawful purpose, including the obtaining of credit, goods, services, or anything of value in the name of that person in the following manner to wit, by using the identifying information to make numerous unauthorized transfers in the total of $179,000 belonging to and in the name of the company. Why do you think that does not answer the modified categorical requirement of fraud or deceit? Because the mere lack of authorization was not done deceitfully. There's no evidence of having been defrauded. But you're, you seem to be saying that if I say to you, Xavier, why don't you take $10,000 from my account, you couldn't, because there's not that much in there. But let's just say hypothetically that there was. I say you take $10,000 from my account and you take $100,000 from my account. Are you suggesting that that's not fraudulent? Even though I gave you permission to take $10,000 from my account. I would say it would be if you lost, if a requirement of what you just described was a loss to you, that I would say that's true, that there has been a loss. Well, if it came out of my account, it's lost, right? Counsel, you keep going back to the statute. Oh, that's not required in the statute. I hear the fact pattern that you're describing, but our statute doesn't require that. I'm talking about the indictment. Let me give you a different example of why I don't think this is fraudulent or the statute describes fraud. Counsel, let me interrupt you here for a second, because I think you keep focusing on the statute. And I we're not now talking about the categorical approach. You're talking about the modified categorical analysis.  The first part of the indictment. The first part of the hypothetical was keyed on a modified categorical approach. So let's put the statute aside for a moment and look at the indictment, as was just read, which parallels, I think, quite well the metaphor that was just given to you. The only difference is that if you look at the way in which the statute defines violation of NRS 205.463, the language where to obtain a credit, good, or service or any value is missing from the third amended indictment when it describes the offense. So there was no transaction which resulted in a deprivation of anything. If you look very carefully at the third amendment, we the judge just read from the first part of the third amended indictment. But at the end of the third amended indictment, it actually describes what she did, unauthorized transfer of money. And the reason why I'm suggesting to you that that may not be fraudulent or disequal is if, for example, you gave me authorization to use your identifying information, asked me to invest in a certain stock or fund, and I did something different and invested in a different stock or fund, that would be a violation of the statute. But that's not what we have here. Do you concede that the analogy that Judge Smith used is, would, in fact, satisfy the fraud requirement? No, I don't. I don't think so. Because it has to be a material misrepresentation. It has to be relied upon to the person's detriment. And it must be a detriment means that there has to be a loss. Is not the material misrepresentation? I agree that that act may be a deceitful act, but I disagree that our statute requires that much, because it doesn't require loss. So, yeah, it's a harmful thing, and it may have been done somewhat by deceit. And that probably every criminal offense is somewhat deceitful. But if we focus entirely upon the element, remember that this is a conviction-based analysis, not a factual analysis, and so we're stuck with what the statute requires, and there is no word in our statute that requires fraud or deceit. Well, we're stuck. We're not necessarily. We could be stuck with what the indictment requires. And I understand your point that the indictment even may not require anything but a nonauthorized transfer. Well, the statute doesn't either. The statute never uses the word fraud. Well, that's the statute. That's why we go to the indictment. We move. Well, I disagree. That's where we sort of part, because in my initial analysis, my point is you can't broaden the statute. You can't say a DUI is a crime of violence. And unless all the DUI elements fit into the definition of crime of violence, you can't do it. You're following, Judge? In a categorical way. You're following, Judge, because you insist. Compare apples and oranges. What was that? You're following, Judge, Kaczynski's observation. Absolutely. I agree with that wholeheartedly. You can't narrow a crime that isn't — doesn't have the same elements in it that the generic definition contained by fiat, by going behind and looking it off of the pre-sentence investigation report, by looking at the amended information, or anything else. You don't even get to that point. You don't even start analyzing until a jury could find all the elements in the generic definition by a violation of the State statute, all the elements. You're not suggesting — you're not challenging this conviction as though it were not a sufficient guilty plea under the statute, under the State statute, are you? No. All I'm saying is our State statute requires — does not require fraud, deceit or loss of the victim. And if it doesn't do that, then you don't begin a modified categorical analysis in a case like this. I love Kaczynski's example. It's perfect for our case. You can't narrow and start looking at all kinds of other things unless a jury would be required to find each and every element of the generic crime by a violation of the State statute. And I'll just say one thing that's glaringly apparent in Lee v. Ashcroft, one of the primary requirements is it has to be required to be pled and proven in the State statute loss of the victim. We don't have a loss requirement here. And that's fundamental. The cases that I cited in my letter a couple of weeks ago are right on point. Well, listen, we appreciate your advocacy, your impassioned advocacy. We're going to now hear from the government, Mr. Hausman. We'll give you a minute of rebuttal. We went well over our time before there. So we'll have Mr. Hausman's presentation. Good morning, Your Honors. May it please the Court, my name is Alan Hausman. I'm an attorney with the Office of Immigration Litigation, Justice Department in Washington, representing the Respondent Attorney General. And I believe in this particular case, which is a review of a decision of the Board of Immigration Appeals, the Board has correctly labeled and numbered the legs and the tails. In this particular case, the Ms. Manning was charged with being removable from the United States based upon a conviction for an aggravated felony crime. Opposing counsel's argument seems to confuse the difference between a conviction under the Nevada statute with establishing removability under the Immigration Nationality Act. Congress has provided that an alien who is an alien in the United States who is convicted of an offense that is an aggravated felony is removable.  Mr. Hausman, in this matter, where did Mr. Manning admit or Ms. Manning admit to an element of fraud or deceit? What document do you point to that contains an admission by the defendant of those particular elements? I point to the record of conviction, and specifically, Your Honor, at pages 446. When you say the record of conviction, what do you mean? Okay. By that, I mean the allocution or transcript. Okay. So you're talking about the colloquy between the judge and the court. Correct, Your Honor. Okay. For the Court's convenience, if you go to page 433 of the administrative record, the significant page of the colloquy appears there. And based upon the questions by the judge, and his questions were broader than the elements of the Nevada statute. And there's no question that we're entitled to look at that colloquy as part of the modified categorical analysis. Absolutely. It's indisputable under circuit law and under the Supreme Court's decisions that one of the proper documents is the transcript of the guilty plea. And in the transcript, Ms. Manning pled guilty, and then the judge went through a series of questions, and as I said, his questions were somewhat broader than the was necessary to make out the conviction. And specifically based upon that page, Ms. Manning admitted the following things. She admitted that she was employed by Carrara di Carrara. She admitted that she took the identification of her employer to make transfers of employers' funds, or bosses' funds. She admitted that the transferred amount was $193,000 in the – in the transfers that occurred during those two separate periods of time that are identified in Count I and Count II of the indictment. She admitted that she was not authorized to make those transfers, and she admitted that she used those funds. It specifically included, she says … Where does she say that? I'm looking at Administrative Record 433. On page 433 in that transcript, at line 17. Okay. The judge asks, were you authorized to make those transfers and use those funds actually belonging to, or at least ostensibly with the authorization of the company Carrara di Carrara of Nevada Incorporated? Yeah. And I see that. It's where she admits that she was not authorized to transfer and use the funds. But it doesn't say that she used the funds, right? That's correct, Your Honor. Okay. And that's the problem. That question by the Court, it's both compound and assumes a fact, not an evidence. And you get an answer to no, to were you authorized. But then placed in that is that they actually – she actually used those funds, or those funds came into her possession. Well, I … Do we have any evidence of that anywhere else that would be admissible, be considered by this Court under the modified categorical approach? Yes, Your Honor. I would submit that her admissions was sufficient on – in that document, was sufficient for the Board to have found that the charge of removability was established. That alone. But in addition, the Board went beyond that, and the Board looked at and then described in its decision information obtained from the pre-sentencing report. And the pre-sentencing report then goes on in a narrative fashion. Is the Court authorized to use a pre-sentencing report in making determinations under the modified categorical approach if it doesn't have the consent of the defendant? I would submit, Your Honor, that that's really the issue that's involved in this case. Right. It's an issue that the Petitioner has raised. Right. And I believe that in this case, the Board acted properly in considering the content of the pre-sentencing report. And why is that? Two reasons. Okay. One is the reason that the Board clearly states. It says it's a waiver argument. It's a waiver explanation. The Board said that in the record of conviction, the Petitioner expressly waived or expressedly indicated that the pre-sentencing report could be utilized and relied upon. So you're, you're, you're, do you have any case law that suggests that when this Court, or for that matter, the judge below, did the modified categorical analysis that there is a waiver element if, if, if the defendant or Petitioner doesn't object, that you can basically consider any document under the sun? Okay. The, the Board did cite two cases. It cited Chang and Abreu-Reyes. And the Chang case then cites Abreu-Reyes. And I will speak to that. But, but just as to Your Honor phrased the question, I would make a comment on that itself. And that's, Your Honor expressed the view that if the Petitioner does not object And I think what the Board cited in this case was not a lack of objection, but an express authorization. Well, to use the PSR, but to use the PSR for what? I mean, normally, we're in a sentencing proceeding, and the PSR could be used for, what, establishing some level of crime or something like that. I think that there are two places. Prior criminal history, you know, things like that. There are, there are two cases, two places in the, in the record, in the documents associated with the conviction, where the PSR is mentioned. One is at page 434, that's the transcript, in which counsel, in which the judge asked, if we, if we can use the pre-sentence report and sentence today. Now, what had happened was the pre-sentence report was the pre-sentence report. Alito, can we use it? Is that what was said? Yes. And you just read that portion of it, so. The question was, the Court asked, has a discussion, and then gets to the point, if we can use, if we can just use the pre-sentence report and sentence today, is that right? Both counsel for the defendant and the government said yes. They said yes on the record. And this is on the record. It's at page 434 of the administrative record in this hearing. But that is the transcript. If we can use it, it's hardly even a question. It's just, you know. Now, the context of that is, Ms. Manning pled guilty to a theft offense in under Nevada law. Right. That guilty plea, the Court allowed the guilty plea to be withdrawn, and a new guilty plea to be entered to the charge, which is the basis for the removability charge here. That is the misuse of personally identifying information. A pre-sentencing report was prepared at the time of the entry of the theft offense guilty plea, and none was prepared at the time of the guilty plea to the personal use. And so the Court was saying, may we use the existing pre-sentencing report that had previously been prepared for the guilty plea on the theft offense? They said if we use it. Yes. And that's why I'm interested to hear what the counsel said. Okay. Did they say, did their counsel say, yes, you may use that, Your Honor? The Court said, immediately preceding the words that I read, the judge said, I'm going to accept the plea of guilty to the two charges in the Third Amendment indictment if we can just use the pre-sentence report and the sentence today. And then what? And then what did the counsel say? Okay. Ms. Langford, who was the attorney for, I believe, for Ms. Manning, said that's correct, Your Honor. And Ms. Saragosa, the prosecutor, said that's correct, Your Honor. I believe the one from this case was dated February 24th, 2004. So that's correct. The what, though? The judge said if we can use it, didn't he? He would accept the guilty plea and go forward to the sentencing if they could use the pre-sentence report that the Court already had, that had been made. You have to admit it's rather ambiguous. Well, we're more. Well, it's not ambiguous in the sense that it's narrowly confined. In other words, it's ambiguous for the meaning you're trying to get into, it seems to me. But what they're saying is, do we have to make a brand-new pre-sentence report because we're having a new plea? And they say, no, you don't have to make a new one. But I don't know that that gets us anywhere in the modified categorical approach. It's not a consent for that use. Okay. In addition, Ms. Manning did something else with respect to the pre-sentence report. At page 307 of the administrative record for the removal proceeding, we have the amended guilty plea agreement. And at line 21, the agreement says as follows. The State has agreed that defendant may withdraw her plea. Her prior plea entered on November 6, 2003. The defendant waives any defect in pleading and agrees to pay full restitution. The State has agreed to retain the right to re-argue at sentencing, and both parties agree to use the pre-sentence investigation report dated February 24, 2004. Those are the two references to the pre-sentence report. Now, the Board looked at this record, and it reached the conclusion that the Petitioner had agreed to the use of the report for the Board's purposes in determining whether or not she is removable. So from your perspective, it's part of the colloquy. That's correct, Your Honor. Now, I would cite the Court to the decision in Chang v. INS 307, F3rd, 1185. And for the proposition that, under the circumstances of this case, and specifically page 1191, under the circumstances of this case, that is, how the pre-sentence report was used, the Ninth Circuit allows the Board to consider the pre-sentencing report. Okay. Arriving at the decision on November 6th. We appreciate your presentation. We'll give Mr. Gonzalez one minute to rebut. Your Honor, hit the nail on the head with regard. There was never any consent to use the pre-sentence investigation report to establish facts that would have to be pled or proven in a removal proceeding that hadn't even taken place or had already been terminated. That certainly isn't found anywhere. In Nevada, the pre-sentence investigation report, as in most states, I'm a criminal report prepared prior to any sentencing. All they did was, look, we're modifying the conviction. The pre-sentence investigation report is going to be used simply for sentencing purposes. Remember, the analysis here is conviction-based, not fact-based. That's the principle of law that doesn't allow us to use pre-sentence investigation reports, because we don't care about the facts. We're not involved in a fact-based analysis. We're involved in a conviction-based analysis. So that should be very clear. In the pre-sentence investigation, and the reason why we don't use it, too, is because the defendants don't always agree to everything contained in the pre-sentence investigation report. In fact, sometimes that's hotly disputed, what's in the report. And that's the case here. Okay. You want to talk about what's in the pre-sentence report? I hate to stop you. I hate to stop you, but you need to stop me.  Thanks for getting that in. Okay. We appreciate your presentations. The case of Manning v. Mukasey is submitted. We thank counsel for their presentations. And we will now hear the case of Houston v. Shomig.
judges: Canby, M. Smith, Larson